Gertie Zoellers **WITHERSPOON**, Respondent,

v.

Lawrence **GUTTIEREZ**, Appellant.

No. 47067.

Supreme Court of Missouri,

Division No. 1.

Sept. 14, 1959.

Rehearing Denied Oct. 12, 1959.

James S. Formby, Strubinger, MacElhern & Formby, Kansas City, for appellant, Lawrence Guttierez.

Albert J. Yonke, Kansas City, for respondent.

HOUSER, Commissioner.

This is an action for personal injuries sustained by a passenger, one Gertie Zoellers Witherspoon, in an automobile collision in Jackson County. A verdict and judgment for $8,000 was rendered for plaintiff and against defendant, Lawrence Guttierez. On this appeal defendant raises only one point: error in the giving of plaintiff's main verdict-directing Instruction No. 1.

Highway No. 71 runs north and south. No. 71 at the scene of the collision is a divided highway with separate double lanes

for northbound and southbound traffic, each 20 feet wide, separated by a wide strip of land. Blue River Road intersects No. 71 at right angles. The site of the collision was the intersection of Blue River Road with the northbound double lane of No. 71. The northbound double lane (for one-way traffic only) consists of two 10-foot strips of paving, i. e., a 20-foot pavement, bounded by shoulders on each side. The shoulders were covered with mud, gravel and cinders. No. 71 is straight and level for 300–400 feet south of the intersection. Both automobiles were traveling north on No. 71. It was dark, 12:30 a. m., but visibility was good. The highway was wet but not slick. The front of defendant's Chrysler automobile struck the rear of the Nash automobile in which plaintiff was a passenger.

The facts favorable to the prevailing party are as follows: As the Nash approached the intersection at a speed of 25 or 30 miles per hour it was traveling on the left or west half of the 20-foot pavement. Its right wheels were near the center line of the two 10-foot strips, its left wheels three or four feet east of the west or left edge of the 20-foot pavement. At a point 50 to 80 feet south of the intersection the driver of the Nash, intending to turn left on Blue River Road, slowed down, started angling to her left, and made a gradual turn to the left. When the Nash was at about a 30-degree angle to No. 71 with its front wheels, or its left front wheel a foot or so over the left or west edge of the pavement, and the rear wheels two or three feet back onto No. 71, traveling about 15 miles per hour, the driver of the Nash hollered, "O, my God." Plaintiff looked back and saw the lights of defendant's Chrysler coming up behind them, to their left. Defendant's Chrysler was traveling at 40–45 miles per hour. Defendant was "trying to pass"; was "going to pass" on their left. It appeared that the Chrysler was going to hit the Nash on the left side, and that would have happened if the driver of the Nash had not turned to the right.

The driver of the Nash cut her wheels to the right, back onto or toward No. 71, and speeded up the Nash to about 20 miles per hour. After the Nash was back on No. 71, headed north and *parallel to the highway*, its front end about even with the north edge of Blue River Road and its rear end about even with the center line of Blue River Road, and with its left wheels "a couple of feet" east of the left or west edge of the pavement, the right front and right headlight of the Chrysler struck the left rear of the Nash. From the time plaintiff first saw the lights of the Chrysler until the time of impact, the time lapse was "a couple of seconds," "something of that order." The severe impact drove the Nash forward about 30–40 feet, inflicting plaintiff's injuries. The driver of the Nash told a deputy sheriff that she slowed down to make a left turn, saw a car coming up behind her and tried to get out of the way, but couldn't.

Defendant's version of the facts: Both the Nash and Chrysler were proceeding on the right or east half of the 20-foot pavement. The Chrysler turned into the left or west half in order to pass the Nash. As the Chrysler was overtaking the Nash and within 20–30 feet of it the Nash suddenly and without warning turned left onto the left or west half of the pavement, in front of the Chrysler, starting to turn into Blue River Road. The Nash did not complete its turn into the intersecting road but turned north again and the collision occurred on No. 71.

Plaintiff's petition charged defendant with negligence as follows: (a) excessive speed; (b) failure to keep a lookout; (c) failure to give any warning of the approach of his automobile; (d) failure to keep his automobile under proper and reasonable control; (e) failure to stop or slow his automobile after he saw or could have seen the Nash; (f) humanitarian failure to slack speed, sound a warning, swerve, slow, or stop; (g) operating the Chrysler while under the influence of intoxicating liquors; (h) "that defendant negligently and care-

lessly caused, allowed and permitted the front end of his automobile to collide with the rear of the automobile in which plaintiff was riding."

Given Instruction No. 1:

"The Court instructs the jury that if you find and believe from all the evidence in this case that plaintiff, Gertie Zoellers Witherspoon, was a passenger in an automobile being driven in a northwesterly direction on Highway 71, a public highway and thoroughfare in Jackson County, Missouri, and that plaintiff was at all times in the exercise of ordinary care for her own safety, if you so find, and if you further find that the defendant, Richard Guttierez, was driving an automobile in a northwesterly direction on said Highway 71, if you so find, and if you further find that defendant was at all times to the rear of the automobile in which plaintiff was riding, if you so find, and if you further find that the automobile in which plaintiff was riding started to make a left hand turn onto Blue River Road from Highway 71, if you so find, and if you further find that thereafter the automobile in which plaintiff was riding turned back onto Highway 71 and was proceeding parallel to said highway, if you so find, and if you further find that defendant thereafter overtook the automobile in which plaintiff was riding, if you so find, and if you further find that defendant thereafter allowed his automobile to run into and collide with the rear end of the automobile in which plaintiff was riding, if you so find, and if you further find that in allowing his automobile to collide with the rear end of the automobile in which plaintiff was riding, if so, defendant failed to exercise the highest degree of care and was thereby negligent, if you so find, and if you further find that said negligence, if any, on the part of defendant caused or contributed to cause defendant's automobile to collide with the automobile in which plaintiff was riding and plaintiff was thereby injured, if you so find, then your verdict must be for the plaintiff."

Assignments a, b, c, d, e, f and g were not submitted to the jury by instructions.

Defendant urges that Instruction No. 1 erroneously submits the so-called rear-end collision "doctrine." Defendant claims that plaintiff's evidence, viewed in the light most favorable to plaintiff, fails to satisfy certain requirements of that "doctrine," and that No. 1 fails to require a finding of facts essential to a recovery thereunder. Defendant quotes the definition of the "doctrine" given in Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360, loc. cit. 362, one requirement of which is that plaintiff have his vehicle "in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding." Defendant contends that plaintiff's evidence does not show, and that No. 1 does not require a finding, that the Nash in which plaintiff was a passenger was in a portion of the highway where it should have been or was entitled to be in view of the course in which it was proceeding; that plaintiff's evidence shows that the Nash made a left-hand turn onto the intersecting road and returned to the highway without stopping, and that the Nash "could not have travelled north on Highway 71 more than the width of Blue River Road before the impact"; that this is not a typical rear-end collision case but is more nearly analogous to the situation where one car comes off an intersecting road and turns onto a main highway and then is hit from the rear by another vehicle traveling on the main highway; that the instant situation is not so simple and out of the ordinary course of events that to merely state the ultimate the facts constitutes an averment of specific negligence; that the rear-end collision "doctrine" is an exception to the general rule that it is insufficient merely to state ultimate facts in a verdict-directing instruction, and that the doctrine should be strictly applied and not extended.

 The judgment must be affirmed. The evidence supported the giving of a proper instruction under the rear-end colli-

sion cases and No. 1 properly submitted that theory of recovery. The northbound double lane was a one-way highway. Vehicles traveling upon a double-lane, one-way highway ordinarily have a right to use either half of the double lane. The driver of the Nash, operating her automobile northwardly on the double lane, was entitled to drive either on the left (west) half, or on the right (east) half, of the double lane. According to plaintiff's evidence the Nash, as it proceeded northwardly, occupied the left (west) half of the double lane as it approached the intersection. The driver of the Nash was operating within her rights. At all times before the collision, according to plaintiff's evidence, the driver of the Nash had her automobile "in a portion of the highway where (she) should have it or (was) entitled to have it in view of the course in which (she was) proceeding." Indeed, the exercise of the highest degree of care required that she use the left (west) half of the double lane in view of the fact that she intended to execute a left turn at the intersection. According to plaintiff's evidence defendant's Chrysler was also traveling in the same direction and in the same half of the double lane, following the Nash. Plaintiff's evidence showed that defendant's Chrysler came from behind and struck the rear end of the Nash in which plaintiff was a passenger. There was no dispute that the collision occurred on No. 71, a one-way double lane. According to plaintiff the Nash was parallel to No. 71 at the moment of impact. While this is not the typical factual situation in which the rear-end collision "doctrine" ordinarily is invoked (because of the deviation in the course of the Nash) it is sufficiently akin to that class of cases (because the deviation was so slight) to require us to uphold a verdict based upon an instruction submitting the elements of that theory of recovery. Instruction No. 1 requires a finding that the automobile in which plaintiff was riding was being driven in a northerly direction on No. 71 and that defendant overtook the automobile in which plaintiff was riding and allowed his automobile to run into and collide with the rear end, etc. Under the facts of this case this was a sufficient requirement of a finding that the automobile in which plaintiff was riding was being driven in a portion of the highway where it was entitled to be. It is not recommended that this theory of recovery be employed except where the facts come strictly within the pattern of the typical rear-end collision situation. In this particular case, however, the evidence and the instruction are such that the jury, believing plaintiff's and disbelieving defendant's version of the facts, undoubtedly understood that a finding of negligence was a necessary prerequisite to the rendition of a verdict for plaintiff.

■ Now if the Nash in which plaintiff was riding had been traveling eastwardly on Blue River Road and had turned left abruptly from the side road onto No. 71 and into defendant's northerly path immediately before the collision (circumstances wholly unlike the typical "clear and simple situation of one vehicle being operated for a considerable distance behind another and overtaking it") a rear-end collision instruction would have been inappropriate. Rosenfeld v. Peters, Mo. Sup., 327 S.W.2d 264. But that is not this situation and the two situations are not analogous. Defendant in his Chrysler had been following the Nash for several hundred feet. The Chrysler was traveling faster than the Nash. When defendant first saw the Nash it was 400 feet north of him. In addition to that 400 feet the Chrysler had to travel the further distance necessary to overtake the Nash, all in all a very considerable distance. Nor was there any deviation from this constant situation (the faster-moving Chrysler gaining on and finally overtaking the slower-moving Nash) sufficient to take this case out of the purview of the rear-end collision cases. True enough, there was a deviation in the course of the Nash (the driver angled to the left [west] edge of the pavement, intending to turn left onto the side road and started to

make the turn) but the deviation was inconsequential, trivial and not so marked as to remove the case from the "clear and simple situation" referred to in the decisions. The Nash did not actually move off No. 71 "onto Blue River Road" and back onto the highway, in the sense that it left the highway. While plaintiff referred to the Nash "turning onto" the side road it is quite obvious, considering her testimony as a whole, that she meant that only a small portion of the Nash ever got onto the side road. After testifying that the front end of the Nash was "onto" the side road she stated that the front wheels were off the highway; that the *left front wheel* "was about a foot or so over the west edge of the highway"; that "the rear wheels would be 2 or 3 feet back on—" (the highway). So the left front wheel or perhaps both front wheels left the highway but only for the briefest moment. There was no evidence from any witness that the rear end of the Nash left No. 71 at any time prior to the collision. (All of defendant's evidence indicates that the Nash remained entirely on No. 71 at all times before the collision.) Accordingly, it cannot be said with accuracy that the Nash "made a left turn onto Blue River Road and then turned right onto Highway 71 again." There was no real break in the continuity of the northerly movement of the Nash on No. 71. For all practical and legal purposes the Nash remained on No. 71 at all times preceding the collision. When the driver of the Nash saw the lights of the Chrysler and appreciated the prospect of a collision by reason of defendant's attempt to pass her on her left, after her wheel had moved slightly off No. 71, good driving procedure required that she abandon the left turn, speed up and proceed north on 71. According to the evidence, the Chrysler would have struck the left side of the Nash had she persisted in making the left turn. In continuing north she had the right, in that situation, to use *any* portion of the northbound lane of the one-way highway, in the absence of any vehicles on the highway other than the two in question.

■ Defendant excepts to that portion of No. 1 requiring the jury to find that the automobile in which plaintiff was riding "started to make a left hand turn onto Blue River Road from Highway 71 * * * and * * * that thereafter the automobile in which plaintiff was riding turned back onto Highway 71." Defendant contends that this definitely precludes recovery under the rear-end collision doctrine because "this evidence clearly shows such improper action on the part of the driver of the automobile in which Respondent was riding as to require that Respondent's submission Instruction specify with particularity and require a finding by the jury of the particular act or acts of negligence upon which recovery is prayed * * *." Instead of showing improper action upon the part of the driver of the Nash this evidence indicates that, confronted with an emergency, she did what a very careful and prudent driver would have done, i. e., abandoned her intention to make a left turn, striving to avoid being struck on the left side, and speeded up and turned back onto the straightaway, in an effort to avoid any contact with the oncoming Chrysler. While the quoted portion of the instruction overemphasizes the deviation, the instruction is not thereby to be condemned.

If plaintiff's evidence had been in accord with defendant's evidence, namely, that the Nash suddenly and without warning turned left from the right lane onto the left or west half of the pavement, in front of the oncoming Chrysler then occupying the left or west half of the northbound lane, and that the Chrysler had struck the rear of the Nash under those circumstances, the so-called rear-end collision "doctrine" would not have been applicable. But plaintiff's evidence was that the Nash had been proceeding north on the left or west half of the pavement for a considerable distance before being struck by the Chrysler. While it would have been better practice for Instruction No. 1 to have required a finding that the Nash was being driven on the left or west half of the pavement, the failure of

Instruction No. 1 to incorporate this additional element has not been raised on this appeal, and its shortcoming in this respect does not appear to have resulted in manifest injustice or miscarriage of justice, so as to require the invocation of Supreme Court Rule 3.27, 42 V.A.M.S. We do not doubt that the jury understood that it had to find and that it did find, according to the theory advanced by plaintiff, that the Nash was proceeding in the left or west half of the pavement as it approached the intersection.

Finally, defendant claims that Instruction No. 1 submitted general negligence; that it constituted a roving commission to the jury; that plaintiff, having pleaded various acts of specific negligence, could not submit the case on general negligence, under the rule stated in Girratono v. Kansas City Public Service Co., Mo.App., 243 S.W.2d 539, affirmed 363 Mo. 359, 251 S.W.2d 59. Under the rulings in Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68; Richardson v. Kansas City Rys. Co., 288 Mo. 258, 231 S.W. 938; State ex rel. Kansas City Rys. Co. v. Trimble, Mo.Sup., 260 S.W. 746; and Rosenblum v. St. Louis Public Service Co., Mo.App., 242 S.W.2d 304, the petition charged, and No. 1 required the finding of, specific negligence. Both the charge and the submission were specific as to who did it, what was done, how it was done, the manner in which it was done, where it was done and the general situation. It is negligence for the operator of an automobile upon the public highways of this state, following another automobile proceeding in the same direction, to allow and permit the front of his automobile to come into violent contact and collision with the rear end of an automobile in front of him. The statement of these specific facts, accompanied by a charge of negligence, constitutes a charge of specific negligence. State ex rel. Spears v. McCullen, supra; Thompson v. Keyes-Marshall Bros. Livery Co., 214 Mo. 487, 113 S.W. 1128.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.