BANK OF AMERICA, N.A., Conservator of the Estate of Samuel Jay Ramsey, Plaintiff–Respondent,

v.

Kevin L. STEVENS, Defendant–Appellant.

No. 24061.

Missouri Court of Appeals, Southern District, Division Two.

July 2, 2002.

Petition for Rehearing and Transfer Denied July 23, 2002.

Application for Transfer Denied Aug. 27, 2002.

David W. Hall, Jr., of Neale & Newman, L.L.P., Springfield, MO, Richard L. Rollings, Jr., Ozark, MO, for appellant.

Steve Garner, James A. Burt, and Jeff Bauer, of The Strong Law Firm, Springfield, MO, for respondent.

JAMES K. PREWITT, Judge.

Kevin L. Stevens ("Stevens") appeals from an adverse judgment for $15 million entered pursuant to a jury verdict in a suit filed by Bank of America, N.A. ("Plaintiff"), conservator of the estate of Samuel Jay Ramsey ("Ramsey"), against Stevens for personal injuries Ramsey sustained in a vehicle/bicycle collision. Stevens asserts the trial court erred by submitting a jury instruction that included excessive speed among its disjunctive submissions of negligence, by allowing the testimony of an expert related to an exhibit admitted into evidence over Stevens' objection, and by allowing the use of Stevens' active pleading as an admission against interest or for impeachment purposes at trial.

On the morning of August 22, 1998, Ramsey was operating his bicycle in the eastbound lane of the north outer road of Interstate–44 in Webster County, Missouri as Stevens was driving eastbound in ·his 1978 Chevy Custom van on the same road. Ramsey's bicycle was struck from the rear by Stevens' vehicle. Ramsey suffered various injuries, including a brain injury, which was specifically diagnosed as a severe closed head injury. As a result of those injuries, Ramsey was hospitalized for several days and then moved to the hospital's rehabilitation unit, which was followed by a several month stay at a nursing home in Ellisville, Missouri, and finally transferred to a nursing home in Sedalia, Missouri, where he was at the time of trial.

Plaintiff, as conservator for the Ramsey's estate, filed suit against Stevens in November of 1998, and subsequently filed a second amended petition on July 16, 1999, which included the claim that Ramsey's injuries were the direct and proximate cause of Stevens' negligence.[1]

Stevens' answer, originally filed on March 8, 1999, was deemed responsive to the later-filed second amended petition. Following a trial held in late September and early October of 2000, the jury returned a verdict in favor of Plaintiff, awarding Ramsey's estate damages in the amount of $15 million. The jury assessed

---

1. The original petition and the second amended petition also included a claim for loss of consortium asserted by Ramsey's wife Ka-

thryn. That claim was dismissed without prejudice on August 24, 2000; thus, she is not a party to this appeal.

100% fault to Stevens. This appeal followed. Additional facts, necessary to our determination, will be set forth under each point.

We address Stevens' second point relied on first as the discussion of it provides a background for the later discussion of Point I. In his second point, Stevens charges that the trial court erred by allowing the testimony of a Plaintiff's expert relating to an exhibit admitted into evidence over Stevens' objection. Specifically, Stevens argues that the exhibit contained irrelevant material regarding the speed of Stevens' van based on different scenarios of various brakes on the van working or not working. Stevens claims that there was no substantial evidence presented that the rear brakes on the van were working and that, thus, the testimony and the exhibit should not have been allowed or submitted to the jury.

At trial, Plaintiff called Sergeant Robert Proctor ("Proctor") of the Missouri State Highway Patrol as an expert witness. Proctor was dispatched to the collision site, investigated the crash, and undertook the process of "accident reconstruction." He testified that he was patrolling in the area that morning particularly because of an increased presence of bicyclists on the outer roads, many of whom were practicing for a bike race scheduled within the upcoming weeks. Proctor's reconstruction report indicated that the weather conditions at the time of the collision were dry and clear, the pavement was dry and straight, Stevens had a clear line of visibility of 6/10ths of a mile, and the sun would not have obstructed that visibility.

His investigation included the calculation of the braking distance and speed of Stevens' van. The speed limit on the outer road was 55 miles per hour. In terms of braking, Proctor testified that his investigation showed that Stevens' van went par-

tially off the right side of the road, but traveled an additional 127 feet and nine inches before any indications of braking were present, and came to rest approximately 385 feet from where it originally went off the roadway. According to Proctor, a vehicle travelling 55 miles per hour, with all of its brakes working at the legal threshold, that had not driven off the roadway, would have taken 126 feet to come to a complete stop, which, in this case, would have been over 77 feet short of the impact area.

Proctor testified that his calculations were complicated by Stevens' van driving off the right side of the road, which would affect the drag factor or actual slipperiness of the road (thus, affecting actual stopping distance), and the braking system on the van. According to Proctor's investigation, partially based on the results of an inspection by a mechanic at the Highway Patrol Headquarters, only the right front brake was working at the threshold necessary to pass a state inspection. The left front brake measured below the legal threshold, the right rear brake was secured by a piece of wire, the left rear brake drum was completely worn, and the rear brake fluid reservoir was empty. Based on the information regarding the brakes, Proctor was able to calculate the minimum speed of Stevens' van, calculations that were provided in Exhibit 3A.

Stevens objected to the admission of this exhibit because it included minimum speed calculations based on scenarios that various combinations of the brakes were working, which Stevens argued was in contradiction to Proctor's testimony. Plaintiff argued that there was evidence, based on evidence that would be presented later in the trial, that three brakes were operative. The trial court overruled Stevens' objection, noting that Stevens' argument went toward the weight of the evidence rather

than its admissibility. The trial court based its ruling on Plaintiff's representation that later testimony would provide evidence that more than just the two front brakes were working, which the trial court determined would allow Proctor to calculate minimum speeds under those circumstances. The trial judge further stated, "If it turns out that there's no evidence in the case that three brakes were working, I'll withdraw this exhibit from evidence and not submit it to the jury."

It is within the trial court's discretion to admit evidence, based on the representation of counsel that other or foundational evidence will be presented later. *Peterson v. Nat'l Carriers, Inc.*, 972 S.W.2d 349, 358 (Mo.App.1998). If the condition is not met or the foundational evidence is not later introduced as promised, the trial court may strike the evidence. *Id.* However, it is not up to the trial court to strike the evidence *sua sponte*. *Id.*

The first calculation in Exhibit 3A showed a minimum speed of 58.536 miles per hour, which was based on three operative brakes the two front brakes and the right rear. The second calculation also was based on three operative brakes, but included the left rear instead of the right rear. The calculation indicated a minimum speed of 60.320 miles per hour, which was higher than the first scenario because the right side of the vehicle had gone off the roadway. The last scenario presented in the exhibit indicated a minimum speed of 51.472 miles per hour, and only included the two front brakes as operative. Proctor testified that the skid marks indicated both front brakes were working, even though only the right front brake pad measured at above the threshold necessary to pass a state inspection.

All of Proctor's calculations were based on Stevens' van leaving the roadway, traveling 127 feet, and then braking. Proctor testified that if Stevens began braking as soon as his van left the roadway, the minimum speeds would increase significantly. Although not a calculation provided within the exhibit, Proctor testified that if Stevens began braking as soon as his van left the roadway and only the two front brakes were operative, the minimum speed would have been 66.443 miles per hour. On cross-examination by Stevens, Proctor testified that, in his opinion, the only calculation that was based on accurate assumptions was the scenario under which only the two front brakes were operable and Stevens did not begin braking until his van left the roadway and traveled 127 feet, which yielded a minimum speed of 51.472 miles per hour.

Portions of Stevens' videotape deposition were played for the jury during Plaintiff's case. Within that deposition Stevens testified that he was aware the brakes were worn and needed to be replaced. He was aware that in the rear, there was one side without a functional brake. Although Stevens testified that he checked mechanical fluids, including brake fluid, on a weekly basis, he was unaware that the rear reservoir was empty.

At trial Stevens testified that he was aware that the right rear brake needed repairs, but that he had not made those repairs prior to the collision. He also testified that he was aware that the front brakes were becoming worn down. In terms of checking fluids on the van, Stevens testified he did so on a weekly basis and had checked the brake fluid within a week before the collision. On the day of the collision, as he saw Ramsey, Stevens testified that he applied the brakes of the van at which point the right wheels of the van went off the road and he applied the brakes harder. Stevens reemphasized during both direct and cross-examination

that he began braking as soon as he saw Ramsey.

■ A trial court has broad discretion with respect to the admission of evidence at trial, including the admission or exclusion of an expert's testimony. *Greer v. Cont'l Gaming Co.*, 5 S.W.3d 559, 565 (Mo. App.1999). A trial court's decision in that regard will not be disturbed absent an abuse of discretion, which only occurs when the ruling is against the logic of the circumstances or is arbitrary and unreasonable. *Id.* Evidence is admissible as long as it is relevant and non-prejudicial, and if it is deemed such, it is for the jury to determine the appropriate weight to assign the evidence. *Gates v. Sells Rest Home, Inc.*, 57 S.W.3d 391, 398 (Mo.App. 2001). Evidence is relevant when the facts tend to prove or disprove facts at issue or corroborate other relevant evidence. *Id.* at 396. In addition, an expert's opinion may be based on hypothesized information, but only if those facts are in the record or admissible as evidence. *Greer*, 5 S.W.3d at 566.

Stevens claims that the trial court erred by admitting Exhibit 3A and Proctor's testimony regarding the various minimum speed calculations because the evidence was irrelevant in that there was no substantial evidence that the rear brakes of Stevens' van were working. We disagree. Although Proctor testified that, in his opinion, the only scenario that included an accurate set of assumptions was the one under which only the two front brakes were operable and Stevens did not begin braking until driving off the roadway and traveling 127 feet (yielding a minimum speed calculation of 51.472 miles per hour), he also testified that he could not be sure whether the right rear brake was working or not since it had the tie-down bolts.

■ Both in Stevens' videotape deposition and at trial, Stevens testified that he was aware that the right rear brake needed repairs, but that he was only aware that one side of the rear was without functioning brakes. Thus, while Proctor's testimony and the calculations in Exhibit 3A may have been based on hypothesized information, the facts necessary for those calculations were brought into the record and made admissible by Stevens. *Id.* The trial court did not err by admitting the exhibit and allowing the testimony and, further, did not err by failing to strike the exhibit from evidence submitted to the jury because the condition upon which the trial court stated it would accept the evidence, that the foundational evidence that three brakes were operable would later be admitted, was present in the record prior to the submission of the case to the jury. Stevens' Point II is denied.

In Stevens' Point I, he contends that the trial court erred in submitting a jury instruction that included excessive speed as one of the disjunctive submissions of negligence. Stevens asserts that there was not substantial evidence to support a submission on excessive speed and that no evidence was presented that excessive speed was a direct or proximate cause of the collision. Stevens also argues that it was not proper for the instruction to include a disjunctive submission based on excessive speed and a disjunctive submission based on defective brakes.

■ We first note that the issue of whether there was evidence presented that excessive speed was the direct or proximate cause of the collision will not be addressed. It is unnecessary to consider this portion of the allegation of error because it was not properly preserved for review. *Crawford v. Childress*, 564 S.W.2d 93, 95 (Mo.App.1978). The specific theory of objection at trial and in Stevens' motion for new trial was that this jury instruction

was inappropriate because there was no evidence of excessive speed. Stevens' brief on appeal advances, for the first time, that no evidence was presented that excessive speed was the direct or proximate cause of the collision. Stevens "may not urge instruction errors on appeal that differ from and were not included in the specific objections made to the trial court, whether before submission of the case to the jury or in the motion for new trial." *Id.*

Within a jury instruction, there must be substantial evidence to support each element of a disjunctive negligence instruction. *Ethridge v. Gallagher,* 773 S.W.2d 207, 210 (Mo.App.1989). If there is not substantial evidence for each disjunctive element, the submission of the entire instruction is in error. *Id.* In determining whether Plaintiff's instruction is supported by substantial evidence, we must consider the evidence in the light most favorable to Plaintiff and disregard Stevens' evidence unless it tends to support the submission. *Wright v. Fox–Stanley Photo Products, Inc.,* 639 S.W.2d 407, 408 (Mo.App.1982).

Whether a particular speed is excessive depends on the circumstances and conditions existing at the time of the collision. *Hartenbach v. Johnson,* 628 S.W.2d 684, 688 (Mo.App.1982). Speed may be considered excessive even if it falls within the stated speed limit. *Roper v. Archibald,* 680 S.W.2d 743, 746 (Mo.App. 1984). The point of inquiry is whether the speed was excessive in the context of the surrounding conditions and circumstances of which Stevens had actual or implied knowledge. *Hill v. Boling,* 523 S.W.2d 867, 870 (Mo.App.1975). There is long-standing precedent under which the mechanical condition of a vehicle may be considered among those circumstances and conditions. *Pitts v. Garner,* 321 S.W.2d 509, 516 (Mo.1959). However, there is also precedent for the concept that two separate disjunctive elements must be considered independently of one another. *See Roper,* 680 S.W.2d at 748. Therefore, Stevens argues that evidence that goes to the submission of defective brakes may not be used to support a separate submission of negligence based on excessive speed; thus, he says, both theories may not be present in the instruction.

Although the evidence presented to the jury included evidence under which the jury may have determined that even the lowest minimum speed calculation, 51.472 miles per hour, was excessive given Stevens' knowledge of the defective condition of his brakes, there was also substantial evidence to independently submit excessive speed. Stevens' testimony was that he began braking immediately upon seeing Ramsey, which led Proctor to calculate a minimum speed of 66.443 miles per hour, an excessive speed with or without defective brakes.

In addition, both calculations based on three operable brakes, a fact to which Stevens testified but now attempts to refute, were above the stated speed limit, 58.536 miles per hour with the right rear brake working and 60.320 miles per hour with the left rear brake working. Stevens' testimony contradicted the assumptions Proctor used to calculate 51.472 miles per hour as the minimum speed, that only the front two brakes were operable and Stevens did not begin braking until driving off the roadway and traveling 127 feet. Therefore, both the defective brakes and excessive speed scenarios were supported by substantial evidence, much of which was conflicting, and the resolution of conflicting evidence is for the jury. *Ethridge,* 773 S.W.2d at 211. There was no error in submitting both theories. Circumstances such as defective brakes may be a factor in

determining if speed is excessive. Stevens' Point I is denied.

Stevens' final point is that the trial court erred by allowing Plaintiff to use Stevens' active pleading, his answer, as an admission against interest or for impeachment purposes at trial. The last question asked of Stevens under direct examination by his own counsel was, "We don't deny, do we, one bit that [Ramsey] was hurt really bad from this accident, do we?" Stevens answered, "No, he is." On cross-examination, the following occurred:

Q: (by Plaintiff's counsel): Sir, you've just indicated you don't deny that [Ramsey] was injured because of this accident. Have you looked at the answer that you filed in this case?

A: (by Stevens): Do what now?

Q: Have you looked at the answer you filed where you denied or your lawyer—

[Stevens' counsel]: Your honor, I'm going to object.

Q:—denied [Ramsey] was injured because of this accident?

[Stevens' counsel]: I'm going to object. This is a legal matter, your honor.

[Plaintiff's counsel]: He opened the door up, your honor. He just said, "We don't deny that he was injured because of this wreck."

[Stevens' counsel]: And I think I have never denied in the course of this trial, even in opening statement, that [Ramsey] in fact has been injured. My objection is is that's a legal matter for the court, your honor.

[Trial court]: Overruled.

Q: (by Plaintiff's counsel) Were you aware, sir, that your answer in this case denied that ... Ramsey was injured as a result of this accident?

A: I said that he was not hurt?

Q: It's the answer filed by your attorney in this case. Were you aware of that?

A: That I said that he was not hurt?

Q: I don't know what you told your lawyer. Were you aware of the answer that you filed in this case?

A: No, I don't guess.

Paragraph 7 of Plaintiff's second amended petition states:

As a direct and proximate result of [Stevens'] negligence, [Ramsey] has suffered severe and permanent injury to his head, skull, face, neck, back, arms, legs and all parts thereof were bruised, contused, fractured, twisted, sprained, lacerated, abraded and injured. Specifically, [Ramsey] has suffered a severe closed head injury, intracranial contusion, diffuse cerebral edema, anterior wedge compression fracture of L1, spinal canal narrowed at T12–L1, acute respiratory failure, subdural hematoma, multiple abrasions, and cognitive and physical residual defects. He has been rendered nervous by this accident, has suffered pain and anxiety of the body and mind, has experienced emotional upset and personality changes. He has suffered all of the above injuries, pain and damages since the date of the accident, suffers them at the present time and will suffer them in the future; said injuries, pain and damages being permanent, disabling and progressive.

In his answer, Stevens replied to paragraph 7 that he "denies the allegations contained in paragraph 7." In addition, as a second affirmative defense, Stevens stated:

For further answer [Stevens] states that if ... Ramsey sustained any injuries or damages, which ... [Stevens] specifically denies, such were caused or contributed to be caused by the carelessness, negligence or comparative fault of

... [Ramsey] and therefore any damages that a trier of fact should or might award should be reduced and diminished in direct relationship to the comparative fault of ... [Ramsey].

 "Generally under our system of procedure the only knowledge a jury can properly have of the issues of fact for its determination must be derived from the instructions of the [trial] court." *Johnson v. Flex–O–Lite Mfg. Corp.,* 314 S.W.2d 75, 79 (Mo.1958). The function of pleadings is to present, define, and isolate the issues in controversy in order to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on its merits. *Id.* As pleadings are addressed to the trial court, and not to the jury, the general rule is that pleadings are inadmissible in evidence. *Littell v. Bi–State Transit Dev. Agency,* 423 S.W.2d 34, 39 (Mo. App.1967).

 However, we must distinguish between abandoned, or superseded, pleadings and active pleadings. Under long-established precedent, all answers filed prior to the one on which a case was submitted are considered superseded and may be admitted into evidence when they contain admissions or statements of fact that are against the interest of the party in whose pleadings they appear. *Wahl v. Cunningham,* 332 Mo. 21, 56 S.W.2d 1052, 1059 (banc 1932). Thus, an exception to the general rule is that an abandoned or superseded pleading is admissible as evidence in the proceeding in which it was originally filed to show an admission against interest or for impeachment purposes. *Riley v. Union Pacific R.R.,* 904 S.W.2d 437, 442 (Mo.App.1995).

 In the case at bar, we are considering an active pleading rather than an abandoned or superseded pleading as Stevens only filed one answer and that answer was deemed responsive to both the original petition and the second amended petition on which the case proceeded to trial. Active pleadings serve the traditional function noted above of identifying the controverted issues. *Lewis v. Wahl,* 842 S.W.2d 82, 86 (Mo. banc 1992). However, the rules outlined for the use of abandoned or superseded pleadings as admissions against interest or for impeachment purposes are not applicable for active pleadings. *Id.* For active pleadings, the general rule is that one may use an active pleading to impeach. *Id.* at 89. There are two limitations on the use of active pleadings, however, in that (1) one may not impeach by using legal conclusions, only statements of operative fact may be used; and (2) one cannot impeach with an inconsistent pleading that includes either alternative allegations against multiple parties or disjunctive allegations of negligence against any single party. *Id.*

 We agree with Stevens that as there was no issue at trial that Ramsey was hurt in the collision and as it appears that portions of Stevens' answer on which Plaintiff questioned him contained legal conclusions and not statements of operative fact, it was error for the trial court to allow Plaintiff to impeach Stevens through use of his active pleading. However, our inquiry into the error does not end there. Reversal is only mandated if the trial court's error materially affected the merits of the action. *Id.* at 84–85; *see also* Rule 84.13. In other words, Stevens must not only show error, but that such error was prejudicial. *Duffy v. Director of Revenue,* 966 S.W.2d 372, 379 (Mo.App.1998). Stevens' active pleading was not admitted into evidence; he essentially was asked only one question about it, which was as a retort to his testimony under direct examination that he did not deny that Ramsey was injured; and his answer to Plaintiff's questions showed Stevens' confusion that

his pleading indicated Ramsey was not injured. We find no prejudice. Stevens' Point III is denied.

The judgment is affirmed.

GARRISON, P.J., and PARRISH, J., concur.