

# Missouri Court of Appeals
## Southern District
### Division Two

| | | |
|---|---|---|
| AMANDA WAMPLER and GENE WAMPLER, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| vs. | ) | No. SD33911 |
| | ) | |
| WESLEY SPEAKE, | ) | Filed January 25, 2016 |
| | ) | |
| Defendant-Respondent. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael Cordonnier, Circuit Judge

REVERSED AND REMANDED

Amanda Wampler[1] brought an action for negligence against Wesley Speake following an auto accident in which she alleged she sustained damages.  A jury found in favor of Speake, and Wampler brings two claims of error on appeal:  (1) the trial court erred in refusing to instruct the jury on the rear-end collision doctrine; and (2) the trial court erred in overruling her objection to a portion of Speake's closing argument.  Finding merit in Wampler's first point, which is dispositive of this appeal, we reverse  and remand without reaching her second point.

---

[1] Amanda Wampler's husband, Gene Wampler, brought a derivative claim for damages based on his wife's injuries. For simplicity, we refer solely to Amanda Wampler throughout this opinion; however, our decision to reverse applies to Gene Wampler's derivative claim as well.

1

## Standard of Review

"Whether a jury was properly instructed is a question of law that this Court reviews *de novo*." ***Bach v. Winfield-Foley Fire Prot. Dist.***, 257 S.W.3d 605, 608 (Mo. banc 2008). We view the evidence and inferences in a light most favorable to giving the instruction and disregard contrary evidence. ***Choate v. Natvig***, 952 S.W.2d 730, 734 (Mo.App. 1997).

> For disjunctive verdict directing instructions to be appropriate, each disjunctive alternative instruction proffered by a party must be supported by substantial evidence. Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case. There must be substantial evidence[,] and a mere scintilla of evidence[] or speculative deductions and conclusions will not suffice.

***Marion v. Marcus***, 199 S.W.3d 887, 894 (Mo.App. 2006) (internal citations and quotations omitted). We reverse for instructional error only if the error resulted in prejudice that materially affects the merits of the action. ***Bach***, 257 S.W.3d at 608.

## Factual and Procedural Background

On a "chilly, but nice February day," four vehicles traveled east on Sunshine Street and a motorcycle traveled west. The first of the four eastbound vehicles signaled to turn left onto Royal Drive and stopped in the eastbound lane, yielding to the westbound motorcycle. The second vehicle, driven by Wampler, successfully stopped behind the first. The third vehicle, driven by Dennis Gammon, "whipped" into the motorcyclist's lane, almost hitting the motorcycle head on, causing the motorcyclist to swerve onto the shoulder to avoid an accident. Gammon then "moved back to the right" and came to a stop without hitting Wampler's vehicle. The fourth vehicle, a box van driven by Speake, was unable to stop and hit Gammon's stopped vehicle, causing it to move "forward and to the left," thereby knocking it "somewhat over into the westbound lane." The impact damaged the rear passenger's side of Gammon's vehicle. After that impact, Speake's box van "sheered [sic] off to the right of [Gammon]" and, while

2

Speake was "paying attention to other things," hit Wampler's vehicle. Speake's second impact damaged the rear bumper and the driver's-side taillight of Wampler's vehicle.

After the close of evidence, Wampler proffered Instruction A to the trial court, which read:

> Your verdict must be for plaintiff Amanda Wampler if you believe:
>
> First, either:
>
>> *Defendant's automobile came into collision with the rear of plaintiff Amanda Wampler's automobile*, or
>>
>> Defendant was following the plaintiff Amanda Wampler's automobile too closely, or
>>
>> Defendant knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have
>>
>>> stopped; or
>>>
>>> swerved; or
>>>
>>> slackened speed
>>
>> but defendant failed to do so; or
>>
>> Defendant failed to keep a careful lookout, and
>
> Second, defendant, in any one or more of the respects submitted in paragraph First, was thereby negligent, and
>
> Third, such negligence directly caused or directly contributed to cause damage to plaintiff Amanda Wampler.
>
> The term "negligent" or "negligence" as used in this instruction means the failure to use the highest degree of care. The phrase "highest degree of care" means that degree of care that a very careful person would use under the same or similar circumstances.

(Emphasis added.)

The trial court refused to give this instruction with the italicized portion concerning the rear-end collision doctrine because it concluded that:

3

The law is clear that the rear-end collision doctrine is not appropriate in anything other than a clear and simple situation of one vehicle overtaking another. The Supreme Court has said it is not recommended that this theory of recovery be employed, except where the facts come strictly within the pattern of a typical rear-end collision. Time and distance are necessary factors in determining whether the overtaking driver permitted the collision to occur. The Court finds in this instance there are much more complicating factors than a simple one vehicle overtaking the other; thus, the rear-end collision doctrine would be inappropriate, and the Court would refuse Instruction A.

Instead, the trial court submitted to the jury Instruction 6 that was identical to the refused Instruction A except for the omission of the portion relevant to the rear-end collision doctrine italicized in Instruction A set forth *supra*.

Following the jury's verdict in favor of Speake, Wampler raised the issue of the trial court's refusal to give Instruction A in her motion for new trial. The motion was denied, and this appeal timely followed.

## Discussion

The rear-end collision doctrine recognizes that if one has his vehicle in a portion of the highway where he should have it in view of his course, and another traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, proof of the collision under such circumstances makes out a *prima facie* case of specific negligence against the driver operating the overtaking vehicle.

*Ethridge v. Gallagher*, 773 S.W.2d 207, 211 (Mo.App. 1989). "The rear-end collision doctrine is limited in scope, and a trial court may instruct a jury under the theory only when the case falls squarely within the doctrine's factual prerequisites." *Varsalona v. Ortiz*, 445 S.W.3d 137, 139 (Mo.App. 2014); *see also Clark v. Belfonte Distrib., Inc.*, 163 S.W.3d 581, 585 (Mo.App. 2005). The doctrine may be applied where the deviation from the typical scenario is sufficiently akin to the typical class of cases, but other expansion of the doctrine is not recommended. *Witherspoon v. Guttierez*, 327 S.W.2d 874, 878 (Mo. 1959).

4

There are several considerations that are important to determining whether to instruct under the rear-end collision doctrine, *see **Kaufmann by Kaufmann v. Nagle***, 807 S.W.2d 91, 94-95 (Mo. banc 1991), and "'[c]ases might be cited pro and con ad infinitum on this subject but, after all, each case depends upon its own particular facts and it is seldom that one decision really controls another[,]'" ***Bryan v. Peppers***, 323 S.W.3d 70, 73 (Mo.App. 2010) (quoting ***Price v. Seidler***, 408 S.W.2d 815, 820 (Mo. 1966)). The ultimate determination as to whether the court should instruct under the doctrine is whether the evidence justifies an inference of negligence. ***Varsalona***, 445 S.W.3d at 139.

In viewing the evidence and inferences in the light most favorable to giving Instruction A, we are required to ignore contrary evidence and inferences. The evidence and inferences here, when so viewed, support that Wampler's vehicle—traveling east in the eastbound lane on Sunshine but stopped for a vehicle in front turning left—was located in a portion of the highway where Wampler should have had it in view of her course. *See **Ethridge***, 773 S.W.2d at 211. Speake was traveling behind Wampler in the same direction, overtook Wampler, and permitted his vehicle to run into the rear of Wampler's vehicle. ***Id.*** Wampler, therefore, made a *prima facie* case of specific negligence supporting the giving of Instruction A. ***Id.***

Speake, however, lists six "complicating factors" that he argues remove this case from any factual scenario warranting the instruction:

1. An unknown vehicle stopped abruptly in front of Wampler's vehicle;

2. The vehicle behind Wampler's vehicle and in front of Speake—driven by Gammon—was following Wampler's vehicle too closely;

3. Gammon abruptly swerved his vehicle into the westbound lane to avoid a collision with Wampler's vehicle, instead of merely bringing his vehicle to a stop or driving onto the shoulder to the right;

4. Gammon swerved his vehicle back into the eastbound lane to avoid colliding with an oncoming motorcycle;

5

5. Gammon's vehicle collided with Speake's vehicle as it re-entered the eastbound lane; and

6. Speake's vehicle "bounced" or "catapulted" into Wampler's vehicle.

Speake's argument is flawed in that it presupposes the jury found the evidence supporting his six "complicating factors" credible. "[E]vidence never proves any element until the [fact-finder] says it does." ***State v. Jackson***, 433 S.W.3d 390, 392 (Mo. banc 2014). "The jury, as the trier of fact, was free to believe or disbelieve all, part or none of the testimony, even if it was unimpeached or uncontradicted." ***Harmon v. Hamilton***, 903 S.W.2d 610, 613 (Mo.App. 1995).

Our standard of review rejects this presupposition by compelling us to disregard evidence and inferences contrary to the giving of the instruction. Speake supports his second, fifth, and sixth "complicating factors" by citing to testimony in the trial transcript as direct evidence of those facts. That evidence, however, is contrary to giving the requested instruction and must be ignored under our standard of review because the jury was free to disbelieve it, even if it was unimpeached or uncontradicted.

Similarly, Speake's first, third, and fourth "complicating factors" are based upon inferences contrary to giving the requested instruction. Whether a vehicle "abruptly stopped," "abruptly swerved," or simply "swerved" are merely inferences the fact-finder could have drawn, but was not required to draw, from the evidence. As stated above, we draw all inferences in the light most favorable to giving the requested instruction. ***Choate***, 952 S.W.2d at 734. Speake's argument relies upon factual inferences contrary to giving the requested instruction. Because such inferences are ignored under our standard of review, they provide no analytical support for Speake's contention.

Speake relies solely on ***Clark*** and ***Witherspoon*** to support his argument that these "complicating factors" remove the case from the purview of the rear-end collision doctrine. In

6

*Clark*, the trial court refused to instruct on the rear-end collision doctrine, and that decision was affirmed on appeal because apparently the uncontested evidence at trial was that the defendant had attempted to avoid a collision but was unable to do so because of icy road conditions.[2] *Clark*, 163 S.W.3d at 585. Because the evidence did not show that defendant had "permitted" his vehicle to run into the rear of the one ahead, a necessary element, instruction under the doctrine was inappropriate. *Id.* Here, unlike in *Clark*, there were several conflicting versions of the events surrounding the collision of Speake's and Wampler's vehicles, any one of which the jury could have believed. One of those possible versions, as set out in the first paragraph of the factual background above, warranted giving the refused instruction.

In *Witherspoon*, the trial court instructed the jury concerning the rear-end collision doctrine, and the jury rendered a verdict for the plaintiff. *Witherspoon*, 327 S.W.2d at 875, 877. The defendant argued on appeal that the facts took the case out of the traditional, simple factual scenario. *Id.* at 877. Although the appellate court agreed that if the plaintiff's evidence had been in accord with the defendant's evidence, the rear-end collision instruction would not have been appropriate, the court determined that the instruction was appropriate based on the plaintiff's version of the events. *Id.* at 879. Here, as in *Witherspoon*, there are alternate versions of the events, one of which supports the giving of the instruction, and the jury should have been allowed to decide which version was true.

Wampler argues that she was prejudiced by the trial court's refusal to instruct the jury under the rear-end collision doctrine because she was denied a possible avenue for the jury to

---

[2] *Clark* does not indicate that any of the facts it relied on in resolving this issue were contested or otherwise identify any standard of review it employed to resolve contested facts. In the absence of either, the only logical assumption is that those facts were uncontested. *See White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010) (appellate court gives no deference to trial court's credibility determinations only when evidence is uncontested). Regardless, *Clark* is clear that the appellate court considered that the evidence supported only one version of the facts and that version did not warrant giving the instruction under the rear-end collision doctrine.

find in her favor.  Speake does not argue otherwise, and we agree with Wampler.  Point I is granted.

## Conclusion

The trial court's judgment is reversed, and the case is remanded for a new trial.


GARY W. LYNCH, J. – Opinion author

NANCY STEFFEN RAHMEYER, J. – concurs

WILLIAM W. FRANCIS, Jr., J. – concurs