**Gracie E. BUTLER, Appellant,**

v.

**David L. CROWE, Respondent.**

No. 27203.

Missouri Court of Appeals,
Kansas City District.

Aug. 2, 1976.

Motion for Rehearing and/or Transfer
Denied Aug. 30, 1976.

Application to Transfer Denied
Oct. 12, 1976.

Lantz Welch, Kansas City, for appellant.

David R. Odegard, James, Odegard & Millert, Kansas City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from verdict and judgment for defendant in action for personal injuries sustained in an automobile collision at 43rd and Main, Kansas City, Missouri. The questions are whether the court erred in receiving a Uniform Accident Report in evidence and allowing it to be passed to the jury, and in permitting expert testimony regarding stopping distances. Affirmed.

Plaintiff's theory was that she was stopped headed north in the intersection on her side of Main Street waiting for the

intersection to clear to make a left turn and go west on 43rd Street when defendant negligently drove his southbound vehicle at excessive speed onto her side of the road and hit her. Defendant's theory was that plaintiff negligently drove her vehicle into the path of defendant's vehicle in the course of making her left turn from Main Street into 43rd Street and collided with defendant on his southbound side of Main Street.

■ During the cross-examination of plaintiff's witness, Officer Thomas Gaugh, the court received into evidence defendant's Exhibit 28A:

DEFENDANT'S EXHIBIT 28A 12-5-73

COMPLAINT NUMBER A99451

| 2.24 PED. INFORMATION | 2.26 VEHICLE ACTION | 2.33 DRIVER CONDITION | 2.38 CONTRIBUTING CIRCUMSTANCES |
|---|---|---|---|
| AT INTERSECTION | 1. GOING STRAIGHT | 1. FATIGUED | 1. SPEED-EXCEEDED LIMIT |
| 1. WITH SIGNAL | 2. OVERTAKING | 2. ILL | 2. SPEED-TOO FAST FOR COND. |
| 2. AGAINST SIGNAL | 3. MAKING RIGHT TURN | 3. PHYSICAL DEFECT | 3. FAILED TO YIELD RIGHT-OF-WAY |
| 3. NO SIGNAL | 4. MAKING LEFT TURN | 4. APPARENTLY ASLEEP | 4. IMPROPER PASSING-HILL |
| 4. DIAGONALLY | 5. MAKING U-TURN | 5. OTHER HANDICAPS* | 5. IMPROPER PASSING-CURVE |
| 5. NOT AT INTERSECTION | 6. SLOWING OR STOPPING | 6. APPARENTLY NORMAL | 6. IMPROPER PASSING-OTHER |
| 6. FROM BEHIND PARKED CAR | 7. STARTING IN TRAFFIC LANE | 7. UNKNOWN | 7. VIOLATION ELECTRIC SIGNAL |
| 7. WALKING WITH TRAFFIC | 8. START FROM PARKED | | 8. VIOLATION STOP SIGN |
| 8. WALKING AGAINST TRAFFIC | 9. BACKING | 2.36 VISION OBSCURED | 9. WRONG SIDE-NOT PASSING |
| 9. GETTING ON OR OFF VEH. | 10. STOPPED IN TRAFFIC | 1. WINDSHIELD DEFECTIVE | 10. FOLLOWED TOO CLOSELY |
| 10. STANDING IN ROAD | 11. PARKED | 2. WINDSHIELD ICE OR SNOW | 11. SIGNAL-FAIL OR WRONG |
| 11. IN SAFETY ZONE | 12. CHANGING LANES | 3. LOAD ON VEHICLE | 12. IMPROPER BACKING |
| 12. PUSHING-WORKING ON VEH. | 13. AVOIDING ( ) | 4. TREES | 13. IMPROPER TURN-RIGHT |
| 13. OTHER WORKING | | 5. BUILDING | 14. IMPROPER TURN-LEFT |
| 14. PLAYING IN ROAD | 2.30 DRIVER HAD BEEN DRINKING | 6. EMBANKMENT | 15. IMPROPER TURN-OTHER |
| 15. OTHER IN ROAD | 1. OBVIOUSLY DRUNK | 7. SIGNBOARDS | 16. WRONG WAY |
| 16. NOT IN ROAD | 2. ABILITY IMPAIRED | 8. HILLCREST | 17. IMPROPER START-FROM PARKING |
| 17. CROSSWALK MARKED | 3. ABILITY NOT IMPAIRED | 9. PARKED CARS | 18. IMPROPER PARKING |
| | 4. IMPAIRMENT UNKNOWN | 10. MOVING CARS | 19. DEFECTIVE BRAKES |
| | 5. NOT DRINKING | 11. OTHER ( ) | 20. DEFECTIVE LIGHTS |
| | 6. DRINKING UNKNOWN | 12. NOT OBSCURED | 21. OTHER DEFECTS(VEHICLE) * |
| | 7. CHEMICAL TEST | 13. UNKNOWN | 22. DRINKING-DRUGS |
| | | | 23. OTHER VIOLATION |

| 2.40 TRAFFIC CONTROL | 2.42 LIGHT COND. | 2.43 WEATHER | 2.44 AREA TYPE | 2.45 ROAD SURFACE | 2.46 ROAD COND. | 2.47 ROAD TYPE |
|---|---|---|---|---|---|---|
| 1. STOP SIGN | 1. DAYLIGHT | 1. CLEAR | 1. BUSINESS | 1. CONCRETE | 1. DRY | 1. STRAIGHT |
| 2. SIGNAL | 2. DAWN | 2. CLOUDY | 2. INDUSTRIAL | 2. ASPHALT | 2. WET | 2. CURVE |
| 3. R. R. SIG./GATE | 3. DUSK | 3. RAIN | 3. SCHOOL-PLAYGR'D. | 3. BRICK | 3. SNOW | 3. LEVEL |
| 4. YIELD | 4. DARK | 4. SNOW | 4. RESIDENTIAL | 4. GRAVEL | 4. ICE | 4. GRADE |
| 5. OFFICER | 5. STREETLIGHTS | 5. SLEET | 5. OPEN COUNTRY | 5. DIRT OR SAND | 5. MUD | 5. CREST |
| 6. NO PASS. ZONE | 6. ON | 6. FREEZING | 6. OTHER * | 6. OTHER | 6. OTHER | |
| 7. TURN RESTRICTION | 7. OFF | 7. FOG-MIST | | | | |
| 8. NONE | 8. NONE | 8. OTHER | | | | |

2.48 IF (*) MARKED, EXPLAIN IN OFFICER'S STATEMENT IF PERTINENT. 2.49 IF AN OBJECT IS STRUCK, IDENTIFY IN DIAGRAM.

USE ARROW TO IDENTIFY NORTH

TRAFFIC LIGHT

31' TO CENTER LINE — DEBRIS #1 #2 MAIN

TRAFFIC LIGHT 43RD ST. TRAFFIC LIGHT

OFFICER'S STATEMENT. #1 DRIVER. MR. CROWE STATED HE WAS S.B. ON MAIN THROUGH THE YELLOW LIGHT AT 43RD ST. WHEN #2 VEHICLE ATTEMPTED TO TURN FROM N.B. ON MAIN TO W.B. ON 43RD INTO HIS PATH. HE APPLIED HIS BRAKES, BUT TOO LATE TO AVOID. #2 DRIVER, MRS. BUTLER STATED SHE WAS STOPPED FACING N.B. IN THE INTERSECTION AT 43RD AND MAIN WAITING FOR TRAFFIC TO CLEAR TO TURN W.B. ON 43RD WHEN #1 VEHICLE RAN THE S.B. LIGHT LIGHT

| 2.50 ARRESTS | NAME | 2.51 CHARGE | U.C.T. NO. | COURT | DATE | TIME |
|---|---|---|---|---|---|---|
| | CROWE, DAVID L. | 54.112A | 890742 | F | 1-14-71 | 1430 |
| | BUTLER, GRACIE E. | 54.112A | 890741 | F | 1-14-71 | 1430 |

REPORTING OFFICER: THOMAS M. GAUGH  RANK PTR.  SERIAL NO. 1910  RADIO ASSIGNMENT 5012

REVIEWING OFFICER: (signature)  RANK  SERIAL NO.

Appellant contends the court erred in receiving the exhibit and allowing it to be passed to the jury, "since it graphically expressed the opinion of the investigating officer as to the place and point of impact and this was not a proper subject for expert or opinion evidence." Appellant's argument indicates that she also complains that the exhibit contained a notation that she "failed to yield the right-of-way," and was arrested.

Appellant argues and respondent concedes that opinion evidence contained in accident reports is generally inadmissible, particularly with respect to point of impact, *Chester v. Shockley,* 304 S.W.2d 831, 834 (Mo.1957), and where the opinion is offered by direct testimony, *Hamre v. Conger,* 357 Mo. 497, 209 S.W.2d 242, 247–248 (1948). See also *Ryan v. Campbell "66" Express,* 304 S.W.2d 825, 828 (Mo. banc 1957); *Housman v. Fiddyment,* 421 S.W.2d 284 (Mo. banc 1967).

The location of debris on Exhibit 28A by Officer Gaugh indicated the area of concentration of debris as he had observed it in contrast to the improper conclusion in *Hamre v. Conger,* supra, where the officer stated that the "point of impact is at the center of the debris and that is where we come to the conclusion that that is the point of impact * * *," 209 S.W.2d l. c. 247, and *Chester v. Shockley,* supra, where a like conclusion was condemned. The graphic location of debris aided the jury in understanding Officer Gaugh's testimony and was properly admitted for that purpose. *Schneider v. Prentzler,* 391 S.W.2d 307, 310–311 (Mo.1965).

■ The admission of an opinion on the relative location of vehicles at impact and plaintiff's "failure to yield," is generally erroneous, but on this record any such error was harmless.

Prior to defendant's cross-examination of plaintiff's witness Gaugh during which Exhibit 28A was admitted, the following direct examination by plaintiff occurred:

"Q [by Mr. Welch for plaintiff]: * * do you, without refreshing your recollection and looking at that report, actually have any recollection or memory of that accident— A. No, sir, I don't. Q. * * * So what you have to tell us would be basically what, then you have written down here in your report? A. That's correct. * * * Q. So, turning to that, * * * Do you indicate what day of the week this accident occurred? A. Yes. It was on a Tuesday. Q. And what time of day did it occur? A. 4:30 P.M. * * *

"Q. * * * Let's talk for just a minute about that intersection of 43rd and Main. * * * was it controlled by electric-traffic lights at that time? A. Yes, sir. Q. * * * as you lead up to that intersection, let's say on Main Street, is there a center line on Main Street as you approach 43rd? A. Yes, sir. Q. Are there crosswalks at the intersection? A. Yes, sir. Q. Does the center line then terminate at the crosswalk, or does it go on across the intersection? A. No, sir, it terminates. Q. * * * Do you indicate here what the weather conditions were at the time of this accident. A. Yes, sir; it was raining. * * * Streets were wet and it was cloudy. * * *

"Q. * * * let's assume no obvious visible signs of injury such as arms cut off, or blood all over—what is your first concern under those circumstances? A. To move the vehicles out of the line of traffic as soon as possible. * * * Q. * * * Then after moving those vehicles, would you then have proceeded to interview the drivers? A. Yes, I would.

"Q. * * * you indicate here the number one driver to be David L. Crowe. * * Does it indicate here on the front page of your report what direction he was going * * * ? A. * * * he was going southbound on Main. Q. * * * does it show on there his speed? A. No.

"Q. * * * And then the number two driver is listed as Gracie Butler; * * * What do you show as far as the direction of

traveling? A. Attempting to turn from northbound on Main to westbound onto 43rd Street. * * * Q. And did you then proceed to interview the number one driver, Mr. Crowe? A. Yes, I did. Q. And please tell the jury what it was that he stated to you? A. Mr. Crowe stated that he was southbound on Main through the yellow light at 43rd Street when number two vehicle attempted to turn from northbound on Main to westbound on 43rd into his path. He applied his brakes, but too late to avoid.

"Q. * * * what did the number two driver Mrs. Butler tell you? A. Mrs. Butler stated she was stopped facing northbound in the intersection at 43rd and Main, waiting for traffic to clear to turn westbound on 43rd Street when number one vehicle ran the southbound * * * light * * *. Q. * * * So the number one driver Crowe claimed the lady was turning left in front of him at that time, and the number two driver Mrs. Butler said she was just stopped there waiting for the light to—What did you say now? A. For—waiting for traffic to clear. Q. * * * so that she would turn westbound. * * * Turning to your diagram that you have here, I notice those cars that you have drawn in are done in a solid line? A. That's correct. Q. Do you have any other method of drawing in cars in a diagram? A. Well, we show after impact with dotted lines, but I have shown that on this diagram. Q. * * * So what does that tell you then, based on your general habits and custom, and usage, as you looked at this diagram the only diagram that you have here of the cars, and the fact that there are solid lines? A. This shows where the impact occurred. * * * As far as what I was told by the drivers. * * * Q. * * * Now the number two driver there stated she was stopped facing northbound in the intersection, meaning let's say that this is her direction of travel here, and this is her center line * * * A. Yes. Q. And the other fellow told you at that time that he was just coming down there and she in fact turned * * *. A. Right. Q. And of course, you weren't there, so you don't know which one to believe? A. That's correct.

"Q. * * * Now do you show some debris out there? A. Yes, I do. Q. * * Basically, what is debris, as it relates to this accident, in this case? A. Debris is mud, dirt, paint chips, road tar, anything that would come off a vehicle after an impact. Q. * * * Now let's say, then, that a vehicle is traveling down a street * * * and it hits—the corner of that vehicle hits this steel post or a rock wall, or another car or whatever—does it then, whatever you have talked about, the particles, fall loose because of that shock? A. They fall from the vehicle. * * *

"Q. * * * So from your college physics knowledge, have you learned that if a particle is either setting on top of a fender of a car, or underneath it, and that car stops moving, that that particle will continue on? A. Yes. Q. * * * Now in this particular diagram, * * * do you show the debris here—or do you try to show it in your diagram in a neat little pile or in a very large area. A. In a general area. Q. * * * What is the average width of a front of a motor car, let's say? A. Well, between five and six feet, depending on the model of the vehicle. * * * Q. Let's take an average vehicle of five or six feet, and when that vehicle impacts something on the corner, * * * does the debris cross-clear across the front end, drop to the pavement? A. Yes, sir. Q. * * * Now I want you to assume, Officer, that there is a car setting here on Main Street, headed north * * * on its own side of the center of the street, and another car comes toward it * * * and hits it * * left fender to left fender. In your opinion, would the debris fall from in front of this southbound car from across the front end you have described earlier? A. Yes, sir. Q. * * * and if that car were one or two feet over the center line, could you find debris then as far west as three feet west of

the center line? A. Yes, sir. Q. How far do you show the debris here as being to the west of the center line? A. Three feet."

Defendant proceeded with cross-examination, also covering the subjects contained in the exhibit, after which defendant offered and the court received the exhibit in evidence.

Further redirect examination covered the following:

"Q [by Mr. Welch]. * * * Officer, what has your practice been, in situations like this where you have differing versions? Do you act as judge and jury or do you charge both the parties to have their matter handled by a judge in a court? A. * * * I charge both parties. Q. What did you do in this occasion, according to your report? A. I charged both parties."

This record demonstrates that plaintiff's witness testified to all the contents of Exhibit 28A. It was only when it was offered in evidence and to be passed to the jury that plaintiff objected. She will not be heard to complain of the admission of evidence which she has already introduced. *Baker v. Woodbury,* 492 S.W.2d 157 (Mo. App.1973). Thus, any error in the admission of the exhibit itself in this case does not require reversal. *Landum v. Livingston,* 394 S.W.2d 573, 580 (Mo.App.1965). As observed by the court, "the subject had been so opened up that it is necessary to admit the diagram."

Appellant contends the court erred in allowing Officer Way to testify in behalf of defendant on stopping distances without laying a proper foundation, "since the expert was not furnished facts comparable to those existing at the time and place of the accident in question." Her argument indicates that she complains of a number of omissions, e. g., road grade, whether its surface was new sharp asphalt, traveled asphalt, or polished asphalt, length of slide, whether there was rain on snow, the temperature of the air and road surface, and tire pressures. This, she argues, violated the

"well-settled principle of law that, before a witness will be allowed to give his opinion as an expert upon a state of facts, a knowledge of which he derives from other witnesses, he must be put in possession of all the facts, as ascertained or supposed, on the question about which the inquiry is made." *Turner v. Haar,* 114 Mo. 335, 21 S.W. 737, 738 (1893). See also *Begley v. Connor,* 361 S.W.2d 836, 842 (Mo.1962); *State v. Koberna,* 396 S.W.2d 654 (Mo.1965).

The difficulty in appellant's contention and argument is the record shows that any such objection was waived.

Defendant called Officer Benjamin E. Way, an expert in traffic investigation, to testify on stopping distances. He related his familiarity with the grade and road surface at 43rd and Main; that the surface was asphalt with no difference from the condition in 1970 as to affect his calculations. Defendant began his hypothetical question and was interrupted by plaintiff for qualifying questions "preparatory to making an objection." Plaintiff examined Officer Way concerning several factors which could affect his calculations on braking distance. Plaintiff concluded with an objection to the witness "giving any answer as to what distance would have been required to stop this vehicle on 12–15–70 as previously asked in the question." The court reserved ruling to permit defendant to further question the witness. Subsequent examination concluded with a restatement of the hypothetical question including a further assumption that the road surface was "old pre-existing asphalt well traffic worn." Plaintiff objected again " * * * for all the reasons hereto given, and for the further reason that in asking this officer to assume that this was old pre-existing well-worn asphalt, that assumes facts not in evidence."

"THE COURT: I assume that will be connected up. MR. ODEGARD [for defendant]: Those facts will be supplied, Judge. MR. WELCH [for plaintiff]: And with that understanding, then any answer given by this officer, if not supplied, will be

stricken; is that further understood? THE COURT: Well, any facts that have been hypothesized, are not supplied, either have not been and do not happen eventually be supplied. Objection is overruled, you may answer."

The foregoing demonstrates that plaintiff's objection did not go to anything other than the assumption of the surface condition of the asphalt, which was not then in evidence and was never thereafter introduced. Neither did plaintiff move to strike the testimony of Officer Way, nor did she request a withdrawal instruction grounded on the failure to supply the missing hypothetical fact.

Such circumstances subject appellant's contention to the general rule that "[o]rdinarily the court is not required to carry in its own mind the details of the trial and, of its own motion, without a request therefor, strike evidence, although it may do so under some circumstances. * * * A motion to strike is necessary * * * where evidence is conditionally admitted, where evidence is admitted which is required to be supplemented by other evidence which is not introduced * * * and, if evidence is admitted subject to rejection or to a motion to strike, and such motion is not made, the objection is waived." 88 C.J.S. Trial § 133, pp. 267–268.

Judgment affirmed.

All concur.