James F. and Jackie **PETERSON**,
Appellants,

v.

**NATIONAL CARRIERS,**
**INC., Respondent.**

No. WD54169.

Missouri Court of Appeals,
Western District.

April 14, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1998.

Application for Transfer Denied
Aug. 25, 1998.

G. Spencer Miller, Christopher L. Heigele, Kansas City, for appellants.

Philip R. Dupont, Robert S. Bruer, Blackwell Sanders Matheny Weary & Lombardi LLP., Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

LAURA DENVIR STITH, Presiding Judge.

Mr. Peterson, the plaintiff below, appeals the trial court's entry of judgment on a jury verdict finding him 80% at fault in a traffic accident. He claims that the court erred in its admission of defendant's expert witness' testimony because that testimony was based in part on inadmissible hearsay. We dis-agree. An expert is allowed to rely on hearsay to support the expert's opinion where, as here, the expert testifies that the evidence is of a sort reasonably relied on by experts in the field and the trial court does finds that the evidence is otherwise reasonably reliable.

We also disagree with plaintiffs' argument that the expert improperly offered his opinion as to the point of impact of the vehicles. To the contrary, the expert simply noted and relied on the places where Mr. Peterson and Mr. Harrison, a defendant, said were the point of impact in making measurements and calculations as to speeds and distances. He did not offer his own expert opinion on those issues. Moreover, once the court said it would rule on specific opinions as they came in, plaintiffs did not object to any of the subsequent specific opinions offered on the basis that they constituted improper point of impact testimony.

We additionally reject the arguments that the expert improperly attacked Mr. Peterson's credibility simply by calculating speeds and distances based on Mr. Peterson's explanation of events and that testimony about such speeds and distances was irrelevant and immaterial. We think it was relevant to the issues of causation and negligence, and that the expert did not improperly use these calculations as the basis for his own conclusions as to Mr. Peterson's credibility, but rather left the issue of credibility to the jury.

Finally, we reject Mr. Peterson's claim that the court erred in admitting as an exhibit the investigating officer's diagram of the scene of the accident. Assuming it was only conditionally admitted, as plaintiffs argue, plaintiffs never moved to strike the exhibit once it became evident that defendant would not call the investigating officer. Moreover, the exhibit was the type of evidence which would have been admissible if the officer had testified, and was simply cumulative of other properly admitted exhibits and testimony. As a result, no prejudice could have resulted from its admission. For all of these reasons, we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 1994, at around 5:00 a.m., a rear-end collision occurred between two

eighteen-wheel trucks traveling in the eastbound lanes of Interstate Highway 70 (I–70) in Saline County, Missouri. Wesley Harrison was the driver of a truck owned by National Carriers, Inc. traveling down I–70. Mr. Harrison's truck collided with the back of Mr. Peterson's truck shortly after Mr. Peterson's truck merged onto I–70 from an on-ramp. The impact of the collision scattered lumber being carried in Mr. Peterson's tractor-trailer over the highway and surrounding area, threw his truck's engine into the radiator, and caused serious injuries to Mr. Peterson. A Highway Patrol Officer investigated the scene and made a report which included photographs of the scene and a diagram indicating his observations at the scene.

Mr. Peterson filed a Petition for damages on January 18, 1996, naming National Carriers, Inc. and Mr. Harrison as defendants.[1] On November 26, 1996, Mr. Peterson filed a Second Amended Petition, adding his spouse, Jackie Peterson, as a party plaintiff and claiming Ms. Peterson suffered a loss of society, services, companionship, and consortium.

At trial, Mr. Peterson called Mr. Harrison. Mr. Harrison testified that after impact the two vehicles traveled between two-tenths to a quarter of a mile to their resting place. Using Defense Exhibit 61, an aerial photograph of the area where the wreck occurred, Mr. Harrison marked his estimates of where the wreck occurred, where his truck was located when he saw Mr. Peterson's vehicle approximately two seconds before impact, and where his truck was located when he saw a third vehicle ahead of him in his lane about ten seconds before impact. Mr. Harrison also verified that Defense Exhibit 62, a photograph of the accident scene, was a fair and accurate representation of the position of the vehicles after they came to rest.

Plaintiffs also called Patrick Medley, a coworker of Mr. Peterson. Mr. Medley was driving a separate truck that was leading Mr. Peterson at the time of the accident. Using Exhibit 61, Mr. Medley pointed out the spot where the vehicles came to rest. Mr. Medley also testified that on the afternoon of the accident, after the vehicles had been re-

moved, he saw skid marks on the road. He identified these marks as those indicated in photographs introduced as Defense Exhibits 10 and 11.

Mr. Peterson also utilized Exhibit 61 in his testimony. After initially indicating that the point of impact was the place that had already been marked as such during Mr. Harrison's testimony, Mr. Peterson later explained that because of where the materials from his truck landed, the point of impact was, in fact, in a different spot, which he marked on Exhibit 61. He also identified the place on Exhibit 61 where the vehicles finally rested and used Exhibit 61 when indicating that skid marks from the accident were still on the shoulder of the road.

Defendant National Carriers offered the testimony of Dr. Bruno Schmidt, a professor with a Doctorate degree in physics, as an expert in accident reconstruction. Dr. Schmidt based his opinions given on direct and cross-examinations on depositions of Mr. Peterson and Mr. Harrison; on Exhibit 69, which was a copy of the Highway Patrol Officer's report and diagram on which the patrolman's estimate of the point of impact had been redacted, leaving only the patrolman's personal factual observations on the diagram; on a discussion with that officer; and on his own investigation of the area where the accident took place. Dr. Schmidt testified that measurements taken by officers investigating accidents are the type of observations upon which experts in the field of accident reconstruction rely. He also testified that Exhibit 69 was a fair and accurate representation, although an enlarged (and redacted) version, of the officer's diagram on which he had relied.

Defense counsel offered Exhibit 69 into evidence. Plaintiffs' counsel objected, arguing that the exhibit was hearsay and could not be "bootstrapped" into admissible evidence simply because an expert relied on it. When defense counsel indicated that the officer who prepared the report was subpoenaed to testify, the court ruled, "For the purposes of what this [expert] witness has said, that he relied upon what is contained within the doc-

1. Mr. Harrison was dismissed by the Petersons prior to this appeal.

ument, it will be received over the objection for that purpose only, that this witness relied upon it." Ultimately, defense counsel did not call the highway patrolman who had made the diagram to testify.

Mr. Peterson's attorney asked that it be made clear that Dr. Schmidt was not to offer his opinion about point of impact. Defense counsel said he would not be asking about point of impact, but that his expert would testify from "another basis." The court stated, "I'll rule them as they come, then, gentlemen." When Dr. Schmidt's testimony resumed, he stated, over hearsay objection, that he had talked with the investigating officer, that the officer told him he observed gouge marks in the pavement, that the officer did not tell him he observed skid marks, and that he relied on the officer's information in reaching his opinions.

Dr. Schmidt also utilized Exhibit 71, a large aerial photograph of the area where the accident occurred, during his testimony. Exhibit 71 indicated the places where Dr. Schmidt had personally viewed and measured various bits of evidence, such as "gouge marks." Dr. Schmidt also copied onto Exhibit 71 various points which had been identified by witnesses testifying about Exhibit 61. For instance, he noted that the gouge marks were located at the same point that Mr. Harrison had identified as the place of the wreck on Exhibit 61. He also marked, on Exhibit 71, the location of an overpass; the distance from the overpass to the beginning of the merge lane; the distance to the end of the merge lane from the overpass; and the distance from the overpass to the final position of the vehicles after the accident.

Dr. Schmidt then offered his opinion as to how long it would take a vehicle traveling at different speeds to travel from one location on Exhibit 71 to another and how long it would take at different speeds from differing locations for these vehicles to meet. Based on his measurements, Dr. Schmidt indicated that for events to have happened as Mr. Peterson had testified, with the vehicles in the positions Mr. Peterson claimed they had been in, Mr. Harrison would have had to have been travelling about 300 miles per hour. On cross-examination, Dr. Schmidt conceded that people involved in serious accidents are often incorrect in their estimates of the circumstances of their accidents. Dr. Schmidt also testified that in his experience, a two-second emergency application of a truck's brakes (as Mr. Harrison had testified was his action before the collision) would cause skid marks.

On cross-examination, Mr. Peterson's attorney also asked Dr. Schmidt to calculate various speeds and distances based upon Mr. Peterson's and Mr. Harrison's varying testimony about the location of the point of impact and considering a hypothetical point between the two points testified to by Mr. Peterson and Mr. Harrison. Dr. Schmidt also testified as to whether Mr. Harrison would have been in Mr. Peterson's "blind spot," at various points. Dr. Schmidt's testimony on direct and cross-examinations was based, in part, upon both Mr. Peterson's and Mr. Harrison's identifications of the "place of the wreck" on Exhibit 61, as well as upon their deposition testimony. At no time did Dr. Schmidt state his opinion as to what he believed was the point of impact.

The jury returned a verdict finding that James Peterson was 80% at fault and National Carriers was 20% at fault. The jury assessed Mr. Peterson's damages at $150,000 while finding that Ms. Peterson suffered no damage. The court entered judgment in favor of Mr. Peterson in the amount of $30,000, plus costs. The Petersons filed a Motion for a New Trial, claiming, *inter alia,* that "[t]he Court erred in admitting hearsay testimony from witness Bruno Schmidt concerning the investigating officer's comments and investigation including but not limited to the diagram from the police report which was not properly authenticated .... [and] in admitting testimony from Bruno Schmidt, Ph.D. which was irrelevant and immaterial." The court overruled the Petersons' Motion for a New Trial, and this appeal follows.[2]

**2.** While both James and Jackie Peterson are named as appellants, they have raised no points on appeal relative to her claim for loss of consortium or to the jury's finding that she suffered no damage. Thus, that portion of the judgment is affirmed, and we address solely the claims rela-

## II. STANDARD OF REVIEW

The issues on this appeal involve the admissibility of an expert's testimony and of the evidence on which the expert relied in forming his opinions. An expert's testimony is admissible on those subjects about which the jury lacks experience or knowledge and which will assist the jury, unless it unnecessarily diverts the jury's attention from the relevant issues. *State v. Lawhorn,* 762 S.W.2d 820, 822–23 (Mo. banc 1988); *State v. Taylor,* 663 S.W.2d 235, 239 (Mo. banc 1984); *State v. Sloan,* 912 S.W.2d 592, 596 (Mo.App. 1995); *State v. Gola,* 870 S.W.2d 861, 864 (Mo.App.1993). It is within the sound discretion of the trial court to determine the admissibility of expert testimony and we will not reverse unless there is a clear abuse of that discretion. *State v. Davis,* 814 S.W.2d 593, 603 (Mo. banc 1991); *Sloan,* 912 S.W.2d at 596. Such an abuse occurs only when the court's ruling is "clearly against the logic of the circumstances or when it is arbitrary and unreasonable." *State v. Williams,* 828 S.W.2d 894, 899 (Mo.App.1992), quoting, *State v. Corpier,* 793 S.W.2d 430, 441 (Mo. App.1990).

## III. ERRORS IN EXPERT OPINION

Mr. Peterson makes four claims of error as to the admission of Dr. Schmidt's testimony. He claims that Dr. Schmidt's opinion was based on hearsay and, therefore, was inadmissible; that the admission of Dr. Schmidt's testimony was error because it "was an attempt to present expert testimony on the point of impact of the vehicles," which is not a proper subject for expert testimony; that Dr. Schmidt's testimony improperly attacked the credibility of Mr. Peterson; and that Dr. Schmidt's testimony was irrelevant and immaterial, and was not the type of scientific, technical or specialized testimony which will aid the trier of fact. We address these contentions in turn.

*A. An Expert Can Rely on Reasonably Reliable Hearsay under Section 490.065.*

We first address Mr. Peterson's claim that the court erred by allowing Dr.

Schmidt to offer testimony partially based on hearsay. He is incorrect in his assertion that an expert may not base an opinion on hearsay. Section 490.065.3, governing the admission of expert testimony, states:

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a *type reasonably relied upon by experts in the field* in forming opinions or inferences upon the subject and must be *otherwise reasonably reliable.* [emphasis added].

§ 490.065.3, RSMo 1994 (emphasis added).[3] This statute does not prohibit an expert from relying on hearsay. Instead, it recognizes the generally accepted principle that an "expert necessarily acquires his knowledge and expertise from many sources, some of which are inadmissible hearsay. Merely because an expert relied on information and opinions of others does not automatically disqualify his testimony. As long as such sources serve only as a background for his opinion and are not offered as independent substantive evidence ... he should not be precluded from testifying." *State v. Delmar Gardens of Chesterfield,* 872 S.W.2d 178, 182 (Mo.App. 1994) (citations omitted). *See also State v. Hendrix,* 883 S.W.2d 935, 940 (Mo.App. 1994).

This approach is fully consistent with the approach in Federal Rule of Evidence 703, which states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a *type reasonably relied upon by experts in the particular field* in forming opinions or inferences upon the subject, the facts or data *need not be admissible* in evidence.

Fed.R.Evid. 703 (emphasis added). Under Rule 703, "[f]acts, data or opinions reasonably relied upon under Rule 703 may be disclosed to the jury on either direct or cross-examination to assist the jury in evalu-

---

tive to Mr. Peterson in the remainder of this opinion.

**3.** All statutory citations are to RSMo 1994 unless otherwise indicated.

ating the expert's opinion by considering its bases. This is true even if the facts, data or opinions have not themselves been admitted and thus may not be considered for their truth." Graham, Handbook of Federal Evidence § 703.1 (3rd ed.1991).

Prior cases have noted that, although the language of the federal rule is more explicit than the language used in Section 490.065.3, they are nearly identical in application. As *Stallings v. Washington Univ.,* 794 S.W.2d 264 (Mo.App.1990), stated:

> Our practice of permitting experts to testify based on reports from third parties is consistent with Rule 703 of the Federal Rules of Evidence.... The Advisory Committee's Notes explain that Rule 703 "is designed to broaden the basis for expert opinions ... and to bring the judicial practice into line with the practice of the experts themselves when not in court." [Fed.R.Evid. 703 advisory committee's note].

*Id.* at 271. Moreover, as *Stallings* noted, this rule makes practical as well as logical sense:

> The Committee observes that experts such as physicians routinely rely upon reports from third parties, even when making life-and-death decisions. Substantive evidence of information acquired from such sources is normally admissible in evidence, "but only with the expenditure of substantial time in producing and examining various authenticating witnesses." *Id.* The Committee concludes that the expert's "validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes." *Id.* Thus, for the limited purpose of permitting an expert to explain the basis of his opinion, the federal rule permits "the substitution of the professional judgment of the expert as to the reliability of the basis facts as a substitute for the traditional process of producing a series of witnesses to establish them." [McCormick, *On Evidence,* (3rd Ed.), § 324.2 (1987) ].

*Id.See also State v. Woodworth,* 941 S.W.2d 679, 698 (Mo.App.1997) ("An expert witness is entitled to rely on hearsay evidence to support an opinion so long as that evidence is of the type reasonably relied upon by other experts in that field, and such evidence need not be independently admissible."); *State v. Rowe,* 838 S.W.2d 103, 110 (Mo.App.1992).

The *Stallings* court indicated its awareness of the types of concerns voiced by plaintiffs herein, that allowing experts to rely on hearsay would unduly enlarge the exceptions to the hearsay rule, but held that " '[i]f it be feared that enlargement of permissible data may tend to break down the rules of exclusion unduly, notice should be taken that the rule requires that the facts or data be of a type reasonably relied upon by experts in a particular field.' " *Stallings,* 794 S.W.2d at 272, *quoting,* Fed. Rule of Evid. 703 Advisory Committee Note.

We agree with *Stallings* and the other authorities cited above that, under Missouri law, the evidence experts rely on in forming their opinions "need not be independently admissible," so long as it is the type of evidence reasonably relied on by experts in the field and is otherwise reasonably reliable. *State v. Candela,* 929 S.W.2d 852, 866 (Mo. App.1996), *citing, Rowe,* 838 S.W.2d at 110; *State v. McFall,* 737 S.W.2d 748, 755–56 (Mo.App.1987). Police reports "can be relied upon by expert witnesses in giving their opinions." *Candela,* 929 S.W.2d at 866, citing *State v. Hendrix,* 883 S.W.2d 935, 940–42 (Mo.App.1994). Accordingly, we hold the court did not err in permitting Dr. Schmidt to base his opinion, in part, on hearsay provided by the investigatory officer.[4]

*B. Point of Impact Testimony.*

During the trial, Mr. Peterson's counsel asked the court to rule that Dr. Schmidt was not to testify about point of impact. Counsel claims now that the court did rule that Dr. Schmidt should not be allowed to testify about point of impact, but that he did so anyway, resulting in reversible error.

**4.** Mr. Peterson is incorrect in his argument that *Kozeny–Wagner, Inc. v. Shark,* 752 S.W.2d 889, 894 (Mo.App.1988), holds that an expert may not rely on hearsay in forming an opinion. That

case simply said that an expert could not simply adopt an opinion of another as his or her own "expert opinion." That is not what Dr. Schmidt did here.

When Mr. Peterson's counsel first requested that Dr. Schmidt be prohibited from offering point of impact testimony, the following exchange took place at the bench:

The Court: Are you going to ask this witness a question similar to, or the same as, where did these two trucks collide with each other?

Plaintiffs' Counsel: Or to assume that this is where it is without anything to provide a basis for that assumption.

Defense Counsel: He has the other basis.

The Court: I'll rule them as they come, then, gentlemen.

The transcript does not explicitly state what the "other basis" for Dr. Schmidt's testimony was. In context, it appears to refer to the fact that Dr. Schmidt based his testimony on direct and cross-examinations on his own factual observations and on the testimony of Mr. Peterson and Mr. Harrison about the point of impact. We so conclude because, in the testimony which followed, Dr. Schmidt testified as to where he found certain gouge and skid marks and debris in his personal examination of the crash site, and he also made certain expert calculations as to speed and distance based on where Mr. Peterson and Mr. Harrison said the impact had occurred. He never said where he personally believed the impact had occurred, however.

■■■ On these facts, we find no reversible error for at least two reasons. First, the trial court said that he would not exclude Dr. Schmidt's testimony entirely but rather would rule on objections to Dr. Schmidt's testimony based on point of impact "as they come." Yet, plaintiffs' counsel never made objections to specific portions of Dr. Schmidt's testimony on this basis following the court's ruling. As noted in *Fieser v. Snyder,* 797 S.W.2d 752, 754 (Mo.App.1990), on similar facts, plaintiff, therefore, has failed to preserve this issue for review.

■■■ Second, the trial court acted properly in not entirely excluding Dr. Scmidt's testimony dealing with the point of impact. There is a distinction between expert testimony on point of impact and lay testimony on point of impact. While Mis-

souri does not permit an expert witness to offer his or her expert opinion as to the point of impact, *Williams v. McCoy,* 854 S.W.2d 545, 552–53 (Mo.App.1993), Missouri does not prohibit a fact witness from testifying to point of impact. Rather, a lay witness " 'may testify to what he hears, feels, tastes, and smells, as well as [to] what he sees....' " *Williams,* 854 S.W.2d at 553, *quoting,* 97 C.J.S. *Witnesses* § 53 at 442 (1957). This includes " 'perceptible facts which tend to show where an accident occurred,' " or, in other words, point of impact testimony. *Williams,* 854 S.W.2d at 553, *quoting, Fieser,* 797 S.W.2d at 754.

Here, plaintiffs offered Mr. Peterson's and Mr. Harrison's testimony as to point of impact. They cannot claim error in its admission. We, therefore, do not see how Mr. Peterson can claim error resulted from permitting Dr. Schmidt to rely on Mr. Peterson's testimony as to point of impact, or that of Mr. Harrison, in making calculations of speed and distance. That is all that Dr. Schmidt did. He used Exhibit 71, which located the "gouge marks" which Mr. Harrison had identified as the place of the wreck and which Dr. Schmidt had personally seen and taken measurements from, in stating his opinion about how long it would take two vehicles traveling at various hypothetical speeds to meet. On cross-examination, Dr. Schmidt also answered several questions calculating speeds and distances based on Mr. Peterson's testimony about the "place of the wreck," Mr. Harrison's testimony about the "place of the wreck," and based upon a hypothetical point between the two. At no time did Dr. Schmidt state an opinion as to where the point of impact occurred. Similar testimony was approved in *Fieser* over a similar objection that it constituted a backhanded method of introducing expert testimony on point of impact. *Fieser,* 797 S.W.2d at 754. We find no reversible error.

*C. Other Objections to Expert Testimony.*

Mr. Peterson also claims that Dr. Schmidt's testimony was erroneously admitted because it improperly related to the credibility of Mr. Peterson's testimony, and because it was irrelevant, immaterial and not a proper subject of expert testimony.

■ Mr. Peterson did not raise any of these arguments below. They are, therefore, not preserved for appeal. Rule 84.13 does permit us to review such claims for plain error if we find that the error has affected the parties' rights so substantially that a miscarriage of justice or manifest injustice would occur if the error were left uncorrected. *State v. Silvey*, 894 S.W.2d 662, 671 (Mo. banc 1995). We do not find plain error occurred here.

■ While it is certainly true that an expert may not testify as to the credibility of other witnesses, *State v. Whitmill*, 780 S.W.2d 45, 47 (Mo. banc 1989); *Lawhorn*, 762 S.W.2d at 823; *Sloan*, 912 S.W.2d at 596, Dr. Schmidt did not testify that Mr. Peterson was not credible. He simply testified concerning how fast the parties would have been going and where they would have been placed assuming that the facts stated by Mr. Peterson or Mr. Harrison were true. While the jury may have determined based on this testimony that Mr. Peterson was not credible, that determination was left to the jury. An expert does not improperly comment on credibility simply because his or her testimony, if accepted, may cause the jury to conclude that a witness is not credible.

■ We also find no plain error in allowing the admission of expert testimony on the issues of speed and distance which were testified to by Dr. Schmidt. The court in *Fieser* recognized similar testimony to be the proper subject of expert testimony. *Fieser*, 797 S.W.2d at 754. In *Fieser*, similarly to here, an expert relied on a police report's discussion of point of impact and about the accident scene. The court found the discussion of skid marks was a proper subject for expert testimony. *Id.* Moreover, below, as noted, plaintiffs' counsel did not contest the propriety of expert testimony as to speed and distance, but instead asked the expert to offer additional opinions based on different factual situations posited to him by plaintiffs' counsel. Counsel cannot now be heard to argue that Dr. Schmidt should not have been permitted to testify on these issues at all.

## IV. ADMISSION OF EXHIBIT 69

■ During Dr. Schmidt's testimony, National Carriers offered into evidence Defense Exhibit 69. It was a copy of the highway patrolman's diagram of the scene when he arrived, but the patrolman's estimation of the point of impact had been redacted, leaving only his personal factual observations on the exhibit. Dr. Schmidt had testified that measurements, such as those in Exhibit 69, taken by officers investigating accidents, are the type of observations upon which experts in the field of accident reconstruction rely. He also testified that this diagram was a fair and accurate representation, although an enlarged version, of the diagram on which he had relied.

When National Carriers moved to admit Exhibit 69, Mr. Peterson objected, and the following exchange took place at the bench:

Plaintiffs' Counsel: The Issue is whether or not items that are simply relied upon by an expert become, per se, admissible because they're relied upon.

My Contention is they do not. You do not bootstrap hearsay into admissible evidence by simply handing it to an expert. And, therefore, the police report has not been authenticated and it is hearsay and for that reason I object.

The Court: Will the officer testify?

Defense Counsel: He's subpoenaed. He's subpoenaed.

The Court: For the purposes of what this witness has said, that he relied upon what is contained within the document, it will be received over the objection for that purpose only, that this witness relied upon it.

. . . .

Plaintiffs' Counsel: My objection specifically is, that this Exhibit is simply an enlargement of a piece of hearsay that has not been properly identified and authenticated. And even if relied upon, it does not become automatically admissible.

What we're going to get into here is a situation where I have serious doubts as to whether this police officer is going to come. I've talked to him. He had not been subpoenaed as of Monday night.

Defense Counsel: He's in a hotel at Crown Center right now.

Plaintiffs' Counsel: If he's going to be here, that's fine. Otherwise, I don't want to have to do this case over because it comes in and then has to come back out.

The Court: [Court views the Exhibit] ... Well, I've already overrule[d] the objection for the purposes of what this witness relied upon and this is received in evidence....

The Court: [within hearing of jury] Just so you are at the same place I am, I'm not receiving that Exhibit as though it contains proof of an actual fact that is in issue in this case, but simply that this expert, or this witness relied upon in forming whatever opinion he may or may not have formed.

The trial court, thus, admitted Exhibit 61 not for the truth of the facts asserted in it but solely to show what the expert relied on in forming his opinion. Plaintiffs argue that the court only admitted the exhibit even for this limited purpose because counsel expressly promised that defense counsel would call the patrolman to testify. Since defense counsel never called the patrolman, plaintiffs assert, the premise for admission of the exhibit was voided and its admission was error. National Carrier argues that the court did not condition admission of the exhibit for this limited purpose on calling the patrolman, and said in oral argument that in fact the reason it did not call the patrolman was that it did not need him since the exhibit had only been admitted for a limited purpose and not as substantive evidence. It, thus, was not hearsay and could come in even without the patrolman's testimony.

■ We need not resolve this issue. Even if we were to accept Mr. Peterson's claim that, essentially, this diagram was conditionally admitted, based on National Carriers' assurance that the officer would later lay the necessary foundation, the "trial court has considerable discretion with regard to the order in which testimony may be received in the trial of a lawsuit ..." *Siedler v. Tamar Realty Co.*, 491 S.W.2d 566, 569 (Mo.App. 1973) (citations omitted). The trial court has the discretion to admit evidence, such as Exhibit 61, based on the representation of counsel that the foundation for the evidence will be introduced later. If that foundational evidence is not later admitted, then the court can strike the evidence due to lack of foundation. It is not up to the court to strike the conditionally-admitted evidence *sua sponte*, however. To the contrary, it is up to the party objecting to the evidence to move to strike that evidence, for:

> Ordinarily the court is not required to carry in its own mind the details of the trial and, of its own motion, without a request therefore, strike evidence, although it may do so under some circumstances.... A motion to strike is necessary ... where evidence is conditionally admitted, where evidence is admitted which is required to be supplemented by other evidence which is not introduced ... and, if evidence is admitted subject to rejection or to a motion to strike, and such motion is not made, the objection is waived.

*Butler v. Crowe*, 540 S.W.2d 940, 945 (Mo. App.1976), *quoting*, 88 C.J.S. Trial § 133, at 267–68.

■ Here, Mr. Peterson never moved to strike Exhibit 61 once defense counsel failed to call the patrolman. The trial court was not required to strike the exhibit *sua sponte*. Moreover, we have reviewed the exhibit in question and we can see no prejudice which could have resulted from its limited admission. " 'If evidence is improperly admitted, but other evidence before the court establishes essentially the same facts, there is no prejudice to defendant and no reversible error.' " *State v. Candela*, 929 S.W.2d 852, 870 (Mo.App.1996), *quoting*, *State v. Carter*, 670 S.W.2d 104, 108 (Mo.App.1984). That rule is applicable here. The exhibit was simple and easily understood, it was explained in detail by the witnesses, two other similar exhibits were introduced and were properly before the jury, and it would have been admissible as substantive evidence if the patrolman had testified. *Spies v. Director of Revenue*, 854 S.W.2d 66, 68 (Mo. App.1993). No reversible error could have resulted from its admission.

For the reasons stated above, we affirm the judgment below.

HANNA and RIEDERER, JJ., concur.